# CIRCUIT COURT REPORTS.

## NEW SERIES—VOLUME XIII.

## CAUSES ARGUED AND DETERMINED IN THE CIRCUIT COURTS OF OHIO.

### DOW TAX NOT OPERATIVE IN DRY COUNTIES.

Circuit Court of Ashtabula County.

WILLIAM G. HAAS v. PERRY C. REMICK, AUDITOR, AND B. E. THAYER, TREASURER OF ASHTABULA COUNTY.

Decided, March, 1910.

*Liquor Laws—Rose Law and Dow Law Can Not be Operative in the Same County—To Traffick in Intoxicating Liquors a Common Law Right—Where the Right is Lawfully Abolished, It Can Not be Taxed—Prohibitory Ordinance of a Municipality Distinguished from a State Law—Traffick in Non-Intoxicants Distinguished from Traffick in Intoxicants—Tax Upon a Traffick not a license, When—Definitions of "License"—Seizure of Property of a Non-Resident for Dow Tax Illegal, When—Due Process of Law—Sections 4364-9, Revised Statutes, and 6108, New General Code.*

1. The Dow tax law is not valid and operative in a county which has been voted "dry" under the Rose local option law.
2. Injunction will lie against levy by a county treasurer, for unpaid Dow tax, on a boat belonging to a citizen of another state, which has been brought without his consent into the waters of this state,

and intoxicating liquors sold therefrom within the limits of a county which has been voted "dry" under the Rose county local option law.

*Mott G. Spaulding* and *Allen M. Cox,* for plaintiff.
*F. R. Hogue,* for defendants.

LAUBIE, J.; METCALFE, J., concurs.

This case is in this court on appeal.   The action was brought by the plaintiff to enjoin the defendants from enforcing the payment of a tax known as the Dow tax, as amended by the Aiken statute, imposed upon William Doering for carrying on the traffic in intoxicating liquors on an electric power boat or launch in Ashtabula county, belonging to the plaintiff, and from selling said boat to satisfy such tax.

The tax was assessed for a year from May 24th, 1909, in the sum of $1,000, with $200 added thereto as penalty, as prescribed in said statute, and the plaintiff alleged in his second amended petition that said county of Ashtabula then was, and still is, what is known as a "dry" county under what is known as the Rose law; that therefore said Dow statute as amended was inoperative in and void as to such county, and was unconstitutional as to "dry" counties.

Plaintiff further alleged that he and said Doering were citizens and residents of the state of Pennsylvania; that he was the owner of said boat and had entrusted it to the care of said William Doering, to be kept and used in the waters of Erie Bay in Lake Erie in said state of Pennsylvania; that said Doering had surreptitiously, and without plaintiff's knowledge or consent, unlawfully taken and moved said boat from said Erie Bay to Conneaut Bay in said county of Ashtabula; that he did not authorize said Doering to sell liquor on said boat, and did not know that Doering was selling liquor on said boat, and that the defendants had levied upon and are intending to sell said boat without notification of any kind to him, and refused to deliver it to plaintiff, and would sell the same if not restrained by order of the court.

To this petition the defendants filed a general demurrer, which was sustained by the court below, and plaintiff not desiring to

further plead, judgment was rendered against him and the case dismissed; and the plaintiff-appealed the case to this court.

The defendants urge that the plaintiff is not entitled to the relief asked upon either of the claims set up in his petition, and assert that the Dow law is valid and operative in "dry" as well as in "wet" counties, and that under its provisions they have the right to sell the boat wherein the traffic was carried on, with-out regard to its ownership, or notice to its real owner.

These are the propositions we are called upon to determine. In its application is the Dow tax law valid and operative as to, and in what is known as "dry" counties? The question is thus limited, as no one disputes its validity and operation in wet counties. We do not think it is because (1) it is in conflict with the local option statute commonly called and known as the Rose law; and (2) if valid and operative therein, it would amount to a license to sell intoxicating liquors, and be unconsti-tutional.

As to proposition 1: The local option statute—the Rose law—was enacted years after the Dow law, and while the Dow law, as amended by the Aiken statute, was in force and effect; and if their provisions are in conflict, the latter act prevails, and to the extent in which they conflict the former act is inoperative.

How is it in this case? What is a tax? A tax is an assess-ment levied yearly by the state upon property which the owner is required to list; and personal rights are property; as, for instance, the common law right to traffic in any lawful business.

The right to traffic in intoxicating liquors is a common law right possessed by the people—a property right, a lawful sub-ject of taxation, and recognized as such in this state. To enforce payment of such tax in any such case against an individual, two facts must exist, viz.: the right to carry on the business where located, and the ownership of such right in the party assessed; and when the state has lawfully abolished such right and owner-ship, how can it lawfully impose a tax thereon?

The state in the Dow law recognized those rights and heavily taxed the persons engaged in the exercise of those rights; but now, through the enforcement of the Rose law, it has abolished

those rights in a greater part of the state, and made their exercise a misdemeanor.

We say the state has done this as the Rose law is a general law, applicable to the whole state, the state being composed of counties, and they are component parts of the state, and when the Legislature authorized its constituent parts to abolish such rights, and made the exercise thereof an offense against the state itself, certainly the abolition of such rights in any county. is in effect the act of and binding in every respect upon the state.

Suppose every county in the state was "dry" under the operation of the Rose law, where could the Dow law be in force and effect? Would not the Rose law render it inoperative and in effect repeal it? And if so why would it not have the same effect now in the "dry" counties, although all are not "dry."

In Ashtabula county at the time in question, and now, to engage in such traffic was and is an offense against the state, and how is it possible that an older law could also be in force and effect there, which recognized and permitted the right in the people to carry on such traffic by the imposition of a yearly tax.

The statute expressly declares the tax is imposed upon the "business of trafficking in spirituous, vinous, malt or other intoxicating liquors," and hence it expressly recognizes the right to carry on such business, and is a permit to do it, and this is made more manifest by the provision in the statute that if the party does not begin the traffic until after the day the yearly tax is to be assessed under the statute, to-wit, the fourth Monday in May, the tax is to be apportioned accordingly; as for instance, if the traffic is not begun until six months after the fourth Monday of May, the tax is to be but one-half of the yearly tax; or, if such party began the business at the beginning of the year, and pays the tax, and afterwards retires from the business before the end of the year, there shall be returned to him a proportionate share of such tax; but in no event shall the tax to be paid, or retained, be less than $200.

It is apparent, therefore, that the statute recognizes the right of, and permits and makes it lawful for, such person to engage

in and carry on such traffic for the length of time for which he pays the tax.

If, therefore, both of these statutes are lawfully operative in a "dry" county, then the persons engaged in such traffic therein can be compelled to pay the tax, and at the same time be prosecuted and fined for the selling, as Doering was in this instance, and all of their liquors taken from them and confiscated.

These statutes are therefore clearly in conflict and the latter one makes the former one inoperative in "dry" counties.

*Conwell* v. *Sears, Treasurer,* 65 O. S., 49, affirming the holding of this court in Harrison county, has no bearing upon this question. That arose in a municipality in respect of a prohibitory ordinance.

A municipality is but a creature of the state and not a component part of it like a county, and municipal ordinances do not prohibit the state from passing and enforcing laws in such municipality in regard to the same matters. This was formally determined years ago by the Supreme Court in *Koch* v. *State,* 53 O. S., 433, the syllabus of which is:

"A former conviction before a mayor for the violation of an ordinance is not a bar to the prosecution of an information charging the same act as a violation of a statute."

The case of *La Follete, Treasurer,* v. *Murray,* recently decided by the Supreme Court, has no bearing upon the question in this case either, as the question involved in that case related solely to the sale of non-intoxicants—it being admitted by the treasurer that the beer sold was not intoxicating.

If the traffic in non-intoxicating beer is subject to the Dow tax, such traffic is not prohibited by the Rose law, and hence in that respect the two acts are not in conflict, and the Dow law to that extent is in force and operative in "dry" counties, as the state has the right to impose a tax upon a business that is not unlawful.

But how is it as to intoxicants? The tax is not upon articles of property and according to their value, but upon the right in a person to deal in them, a personal right only. How can the state compel a person to pay a tax on such a personal right when

such a right is not owned by him, does not in fact exist, and the attempt to use it is a misdemeanor—an offense against the state.

And this brings us to the second proposition, viz: If the Dow law is in force and operative in "dry" counties, does it not in effect operate as a grant of a license, instead of imposing a tax? If a license, it is of course unconstitutional, and the law void.

It can not be treated as a penalty as the penalty is affixed by the later Rose law.

When and how does a tax become a license? A tax becomes a license when imposed upon a traffic that is forbidden and unlawful; as a tax can not be imposed upon a personal right which the people do not and can not own, and the attempt to exercise which is a criminal offense. The Supreme Court has in effect so held.

In *State* v. *Hipp*, 38 O. S., 199, and *Butzman* v. *Whitbeck*, 42 O. S., 223, and *State* v. *Sinks, Ibid*, 345, it was held that, "The constitutionality of a statute depends upon its operation and effect, and not upon the form it may be made to assume," and in each case the statutes then in force, imposing a tax upon the traffic in intoxicating liquors, was held to be a license and void.

In the Hipp case it was so held, by reason of the provision in the Pond law, which required a person engaged in such traffic on the premises of another person to give a bond, which if he failed to give, or if the bond was forfeited, he should be deemed guilty of a misdemeanor, and fined or imprisoned, as the provisions of the statute took away the right to engage in such traffic on the premises of another person in effect, and then granted that right to those who would execute such bond.

In *State* v. *Sinks,* the court held that, by reason of such provision in the Scott law, it rendered the whole act unconstitutional and void.

In *Butzman* v. *Whitbeck, ante,* upon the same principle, the Scott law was held to be a license as it provided that whoever engaged in, or continued in such traffic on land or premises not owned by him, without the consent of the owner, should be held guilty of a misdemeanor.

In *State* v. *Frame*, 39 O. S., 399, and in *Adler* v. *Whitbeck*, 44 O. S., 539, and *Anderson* v. *Brewster, Ibid,* 576, these prior cases were referred to but not reversed.

In these six cases each decision was by a majority only, but all substantially agreed as to the definition of the word "license," and disagreed only as to its application to the statutes in question, under the facts in the cases.

In *State* v. *Frame*, 39 O. S., in the majority opinion, Judge McIlvaine, who united in the holding in *Hipp* v. *State*, on page 412 said:

"While there is no disposition on the part of the court to overrule the decision in that case (the Hipp case) or to depart from the definition of a license as therein laid down, we find that there are fundamental differences between the two statutes in relation to provisions upon which this question depends."

And on the same page he states that the question of lien or license was not necessarily involved in that case, and that the court passed upon such questions merely because counsel had argued them.

In *Adler* v. *Whitbeck*, in the opinion on pages 558, 560, 561 and 562, the following appears:

"There seems, however, little difference of opinion as to the definition of a license. It is defined, in its general sense, by Okey, J., in *State* v. *Hipp*, as 'permission granted by some competent authority to do an act which, without such permission, would be illegal.' This agrees, in substance, with the definition as given in a number of other cases. * * * In *Chilvers* v. *People*, 11 Mich., 43, it is said: 'The object of a license is to confer a right that does not exist without a license.' 'The popular understanding of the word license undoubtedly is,' says Cooley, J., in *Youngblood* v. *Sexton*, 32 Mich., 406, 'a permission to do something which without the license would not be allowed'; and he adds, 'this is also the legal meaning.' In *State* v. *Frame*, 39 Ohio St., 399, the language employed by McIlvaine, J., is somewhat different, but the definition is in substance the same. He says 'A license is essentially the granting of a special privilege to one or more persons, not enjoyed by citizens generally, or, at least, not enjoyed by a class of citizens to which the license belongs. A common right is not the creature of a license. The result of the definitions that have

been given of a license is implied in its etymology, is in conformity to the sense in which the word is ordinarily used, and may be regarded as strictly accurate. That is permitted which can not be done without permission; and to say that a person is permitted, licensed, to do what he may lawfully do without permission, is a misuse of words. * * * Every person has the right under the statute to rent property and engage in the business if he desires to do so. * * * As shown, the nature of a license is to create a right that did not exist and could not exist without the license. * * * In what way would the payment of the tax be a license to do what he had an *unbridled license to do before he paid it.*' '' (The italicizing is mine.)

In the later case, *Anderson* v. *Brewster*, the tax was held not to be a license mainly upon the ground that the traffic was *not prohibited*, and was lawful whether taxed or not, the opposite of the question we have here.

In the majority opinion in that case, commencing on page 587, it is said:

''A license in law may be simply and well defined as a permission, but it is a permission given by some competent authority to do an act which, without the permission, would not be legal. * * * He enters upon the traffic in intoxicating liquors, without a license, and when found in the business the law *suffers it to continue*, but charged with the burden of a tax. The distinction is clearly recognized, between a license granted or required as a condition precedent before a certain thing can be done, and a tax assessed on a business which one is authorized to engage in. * * * The object of a license, says Mr. Justice Manning, 'is to confer a right that does not exist without a license' (*Chilvers* v. *People*, 11 Mich., 43, 49). Within this definition, a mere tax upon the traffic can not be a license of the traffic unless the tax confers some right to carry on the traffic *which otherwise would not have existed.* We do not understand that such is the case here. The very act which imposed this tax *repealed the previous law which forbade the traffic and declared it illegal.* The trade then *became lawful,* whether taxed or not; and this law imposing the tax did not declare the trade illegal in case the tax was not paid. If the tax is paid, the traffic is *lawful;* but if not paid the traffic is equally lawful. * * * The state has provided for the taxation of a business which was *found in existence,* and the carrying on of which *it no longer prohibits.*'' (The italicizing is mine.)

Apply that ruling to this case, and how does it stand? Is the traffic lawful in "dry" counties whether the tax is paid or not? Is it no longer prohibited by the state in such counties?

Under such ruling, the answers to these questions would conclusively show, that if the Dow tax is held to be legal and operative in such counties, it is a license instead of a tax.

No one can lawfully carry on such traffic in such parts of the state without the permission of the state, and that permission is granted when the state recognizes the right, and allows one to carry on such traffic as long as he pays the tax.

This idea is borne out by the opinion expressed by Judge McIlvaine in *State* v. *Frame, ante,* commencing on page 413, where he says:

"The right to traffic in intoxicating liquors for the purpose of drinking, before the passage of the Scott law, was the common right of each and every citizen of the state. It so remained after its passage. * * * The personal right to engage in the traffic *is not taken away* from any person." (The italicizing is mine.)

How was it in this instance when the tax was assessed against Doering? The right had been taken away from every person in that county. It was a criminal offense to exercise it, and he was arrested and paid a fine for doing it. A tax upon any traffic is upon the right of those engaged in it to carry it on—recognizing that right; but when that right is taken away by statute, if an older statute is held to be in force which allows the right to carry on the traffic as long as desired by the trafficker by paying the tax specified in such statute, certainly such tax is turned into a license, as such traffic could not then be carried on except under some authority from the state, and that authority would be in effect a license; and it is evident from the contrary opinions rendered in the cases cited, *ante,* that such would have been the holding of the courts in those cases, as those decisions were based in substance upon the sole ground that the common law right of the people to traffic in intoxicating liquors was not then forbidden and made unlawful by the state.

There is the further point to be considered, as presented by the plaintiff. Mr. Haas, the owner of the boat, is a citizen of the

state of Pennsylvania, and as it was brought here from that state unlawfully and without his consent and knowledge, and the traffic engaged in without his consent and knowledge, what right would the county or the state have to levy upon and sell it for a tax assessed upon another person, upon Doering, the man who had substantially stolen the boat?

What authority could there be in such a case to take that boat from this owner and sell it, and that too without any notice to him; without giving him any right to a hearing before a court or even before the treasurer?

It is claimed that by virtue of the authority granted in the statute, which provides for the collection of a tax in the case of a non-payment, that the treasurer "shall levy upon the goods and chattels of such person, corporation or co-partnership, wherever found in said county, or on the bar, fixtures or furniture, liquors, leasehold and other goods and chattels used in carrying on such business, which levy shall take precedence of any and all liens, mortgages, conveyances, or incumbrances hereafter taken or had on such goods and chattels, so used in carrying on such business; nor shall any claim of property by any third person to such goods and chattels, so used in carrying on such business, avail against such levy so made by the treasurer."

Now we do not doubt but what by the terms of the act itself the right was attempted to be taken away from any person who claimed to be the owner of the property upon which the sale was illegally made.   That is substantially the wording of the act, and which it is claimed has to a certain extent been upheld by the Supreme Court in the cases heretofore referred to; but the question here is a new one, viz: is it a legal provision and effective as against a citizen of another state who claims the property in the manner claimed here by the plaintiff, that this boat was stolen from him substantially and brought into this state, and the traffic carried on without his knowledge or consent or approval in any way.   Can this property be taken from him to pay the tax assessed against the man who stole the boat?

The Constitution of the United States which applies to and covers this case and the parties, forbids this by the provision that no man's property shall be taken from him except by due

process of law.  By what due process of law is this property of
the citizen of another state sought to be taken and sold for a tax
assessed upon the man who unlawfully carried it off from such
other state?   It can not be claimed for an instant, we think, that
due process of law against the thief is due process against the
owner.   To satisfy those provisions, the property can only be
taken by due process of law against the owner in such a case as
this.   Otherwise what right has a citizen of another state to his
property that has been surreptitiously and unlawfully taken
from him and carried into this state.

But even as to citizens of the state, we think this question is
fully settled in *Minick* v. *Grimes, Treasurer,* and *Sunday Creek
Co.* v. *Woodworth,* 79 O. S., 174, under the provision of our
own state Constitution.   In those cases the statute in ques-
tion provided for the levy of a per capita tax upon dogs, and
authorized the collection thereof by a sale of the real estate upon
which the dogs may have been kept and harbored by a tenant,
although the owner of such real estate, the lessor, had no knowl-
edge thereof, and did not consent thereto; and which statute the
court held to be inconsistent with the constitutional rights of
such owner, and void.

In the opinion Judge Davis, on page 180, defines the question
as follows:

"Thus the property of an innocent person may be taken with-
out notice, and without due process of law to recompense an in-
jury to another committed by a third person who holds no rela-
tion to the land owner except that of a tenant under a lease."

We think the doctrine of that case establishes the right of this
plaintiff of itself to the relief asked, under the facts alleged in
the petition, but we fully considered the prior constitutional
questions herein, because counsel for defendants express the de-
sire to file an answer if the demurrer is overruled, and there
can be no issues of fact raised except as to those alleged in re-
gard to this last point; and if it were shown that the plaintiff
had consented to the acts of Doering, it could not in any way
change his right to the relief asked.

The demurrer is overruled.